UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKY QUI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TODD M. LYONS, ACTING DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>　　　　Defendant. | Case No. 25-cv-03475-WHO<br><br>**EX PARTE TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 4 |

Plaintiff Tian Qui (a/k/a Sky Qui, hereafter "Sky") is an international student present in the United States in what is known as "F-1" status for graduate studies or post-graduate practical training. Earlier this month, without notice, explanation, or opportunity to respond, defendant U.S. Immigration and Customs Enforcement ("ICE") (hereafter, the "government") terminated Sky's immigration status as a student. Sky learned of this on April 18, 2025, from his sponsoring university, the University of California, Berkeley ("UC Berkeley"), when UC Berkeley informed him that his record in the comprehensive federal database (the Student and Exchange Visitor Information System, or "SEVIS") that monitors the activities of foreign students had been terminated by the government, effective April 8, 2025. While Sky does not have a criminal conviction in the United States, the reason for termination entered into the system was that he had been "identified in criminal records check and/or has had [his] visa revoked." Without an active record in the government's system, Sky contends that he cannot study, work, or remain in the country. Sky seeks a temporary restraining order ("TRO") enjoining the legal effect of ICE's termination of Sky's SEVIS record and F-1 status and ordering ICE to activate his SEVIS record and F-1 status.

1    This is the latest of several cases like it filed in the Northern District of California within
2    the last two weeks. *See* Case Nos. 4:25-cv-03140-JSW, 5:25-cv-03244-NW, 3:25-cv-03292-SI,
3    3:25-cv-03323-AGT, 5:25-cv-03383-SVK, 3:25-cv-03407-EMC. The lowest-numbered case has
4    been assigned to the Hon. Jeffrey White. Under the Northern District's Civil Local Rules, Judge
5    White is considering whether to relate the cases; if deemed related, this case, and others like it,
6    would be reassigned to him. *See* Civ. L.R. 3-12.

7    While I am withholding judgment on Sky's claims for broader relief—including that his F-1 status and SEVIS record be reactivated—until I have the benefit of the government's response and a hearing, like my colleagues, I have determined that some interim protections for Sky are necessary to maintain the status quo. In making this determination, I follow three other judges in this district that have granted F-1 student plaintiffs similar temporary relief. *See* 4:25-cv-03140-JSW, Dkt. No. 16; 5:25-cv-03244-NW, Dkt. No. 13; 3:25-cv-03292-SI, Dkt. No. 18.

I am also setting a schedule for a hearing on this matter. After plaintiff serves a copy of this order on the government (counsel for plaintiff has stated that he has already provided copies of the complaint and TRO Motion to the U.S. Attorney's Office), the government will file an opposition to the plaintiff's TRO Motion by **April 24, 2025, at 5:00 PM**. If the cases are not related before then, I will hold a hearing on the TRO Motion on **April 28, 2025, at 3:00 PM**, via Zoom videoconference. If the parties meet and confer about a different schedule to which they both agree, I will approve any reasonable stipulation that takes into account the court's schedule.

## BACKGROUND

### I.    FACTUAL BACKGROUND

Sky is a Chinese F-1 student seeking a doctorate in biostatistics at the University of California, Berkeley ("UC Berkeley"). Dkt. No. 4-2 ("Sky Decl.") ¶¶ 3-4, 20. Sky has lived in the United States since August 2017, which is when he started his courses at the University of Washington, where he pursued his bachelor's degree in applied and computational mathematical science. *Id.* ¶¶ 5, 8, 10. He has maintained lawful F-1 student status since August 2017. *Id.* ¶¶ 21-22.

On November 15, 2018, while he was attending the University of Washington, Sky was

stopped by police and informed that someone had reported him for assault. *Id.* ¶ 11. He was detained and booked into jail, where he stayed overnight. *Id.* ¶¶ 13-14. The next day, all charges were dropped. *Id.* ¶ 15; *see also* Dkt. No. 4-2, at 8-9. In the fall of 2024, Sky was issued a parking ticket, which he appealed, and UC Berkeley upheld his appeal and dismissed the citation. *Id.* ¶ 23; *see also id.* at p. 10 (Notice of Administrative Review Decision from UC Berkeley dismissing parking citation). He has no criminal record. *Id.* ¶ 16.

In the summer of 2022, Sky's F-1 visa, which was issued to him on June 28, 2017, expired naturally. *Id.* ¶¶ 6, 21. He remained in a "duration of status" because he had remained a full-time student throughout his time in the United States. *Id.* ¶ 21. He has never violated his F-1 status because he has continuously pursued his degrees in the normal course. *Id.* ¶ 22.

On April 18, 2025, UC Berkeley informed Sky that his SEVIS record was terminated by the Federal Government, effective April 8, 2025, for the reason, "OTHER – Individual identified in criminal records check and/or has had their visa revoked." Sky Decl. at 11 (email from UC Berkeley); Dkt. No. 4-6 (Employment Letter). The Employment Letter went on to inform Sky that this meant he could not be employed by the University of California, and as a result, he was being placed on immediate unpaid leave, and his appointment as a Graduate Student Researcher would be ended effective April 30, 2025. Dkt. No. 4-6 (Employment Letter).[1]

## II. LEGAL AND REGULATORY FRAMEWORK

An individual "having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study" is consider a "nonimmigrant" student. 8 U.S.C. § 1101(a)(15)(F)(i).[2] Federal regulations

---

[1] In addition to the Employment Letter and several relevant documents that he attaches to his declaration, Sky has also attached as Exhibit C to his TRO Motion a USCIS "Notice of Intent to Deny," from which all identifying information has been redacted. *See* Dkt. No. 4-5. It is not apparent how this document is related to Sky's claims.

[2] 8 U.S.C. § 1101(a)(15) provides that the term " 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrants," and goes on to list several dozen categories of nonimmigrants, including students that fit the relevant description provided in subsection 15(F)(i).

3

designate this classification of nonimmigrant student as "F-1," 8 C.F.R. § 214.1(a)(2), and set forth guidelines for individuals who are granted F-1 status, 8 C.F.R. § 214.2(f).

Because different courses of study take different times to complete, nonimmigrant students who acquire an F-1 visa, seek admission, and get admitted to the United States are admitted for the "duration of status," not a set period. 8 C.F.R. § 214.2(f)(5)(i). The relevant regulation defines "duration of status" for F-1 students as follows:

> *General.* Duration of status is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies, except that an F-1 student who is admitted to attend a public high school is restricted to an aggregate of 12 months of study at any public high school(s). An F-1 student may be admitted for a period up to 30 days before the indicated report date or program start date listed on the Form I-20 or successor form. The student is considered to be maintaining status if the student is making normal progress toward completing a course of study.

*Id.* A student must maintain their nonimmigrant status or risk removability. 8 U.S.C. § 1227(a)(1)(C)(ii). A nonimmigrant may fail to maintain their nonimmigrant status by accepting unauthorized employment, providing false information to the government, or receiving a "conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year of imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(e)-(f). If a student fails to maintain their F-1 status for any reason, schools must report this in SEVIS, the database run by ICE and managed jointly by the federal government and universities. 8 C.F.R. § 214.3(g)(2)(ii)(A). Nonimmigrants who fail to maintain their status properly are subject to deportation. 8 U.S.C. § 1227(a)(1)(C)(i). A nonimmigrant may also have their status terminated

> [b]y the revocation of a waiver authorized on his or her behalf under Section 212(d) (3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons.

*Zhuoer Chen v. Kristi Noem*, No. 3:25-cv-03292-SI (N.D. Cal. Apr. 18, 2025); 8 C.F.R. § 214.1(d). Revocation or expiration of a nonimmigrant's F-1 visa is not among the permitted reasons for terminating their F-1 visa status in the SEVIS system. *Student Doe v. Kristi Noem, et al.*, No. 2:25-CV-01103-DAD-AC, 2025 WL 1134977, at *6 (E.D. Cal. Apr. 17, 2025); *John Roe,*

4

*et al. v. Noem, et al.*, No. 25-cv-00040-BU-DLC, 2025 WL 1114694, at *3 (D. Mont. Apr. 15, 2025) ("8 C.F.R. § 214.1(d) does not provide statutory or regulatory authority to terminate F-1 student status in SEVIS based upon revocation of a visa.").

If an F-1 student loses their status, they may apply for reinstatement when "[t]he violation of status resulted from circumstances beyond the student's control" or "[t]he violation relates to a reduction in the student's course load that would have been within [a school official's] power to authorize, and that failure to approve reinstatement would result in extreme hardship to the student." 8 C.F.R. § 214.2(f)(16)(i)(F)(1)-(2).  The government's decision whether to reinstate the student's status is discretionary and cannot be appealed.  *Id.*, subd. (f)(16)(i)-(ii).

When the SEVIS record of an F-1 nonimmigrant is terminated, the student faces "irreparable injury." Dkt. No. 4-3 (Banias Decl.).  Termination of F-1 nonimmigrant status in the SEVIS record means that the nonimmigrant cannot work as a graduate research student, and "cannot lawfully pursue a degree in the United States." *Id.*; *see also Chen*, 3:25-cv-03292-SI (N.D. Cal.), Dkt. No. 18 at 8-9.  Moreover, the nonimmigrant student becomes subject to civil detention for being present in the United States without a lawful status.  *Id.*  Defendant ICE has made "various public announcements" that it intends to arrest, detain, and deport all noncitizens that it considers criminals.  *Id.*  Further, termination means the student cannot re-enter the United States, ICE may "investigate to confirm the departure of the student," and any dependents on F-2 status also have their records terminated.  *See* Department of Homeland Security, *Terminate a Student*, Study in the States, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-andterminations/terminate-a-student [https://perma.cc/796U-7BUY].

### III. PROCEDURAL BACKGROUND

Sky filed his Complaint on April 21, 2025, and he filed a motion for a temporary restraining order ("TRO") on the same day.  Dkt. No. 1 (Complaint); Dkt. No. 4 (TRO Motion).  The complaint asserts that the termination of Sky's SEVIS record violates the Administrative Procedure Act ("APA").  Dkt. No. 1 ¶¶ 59-63.  Although the government has not yet been served, counsel for plaintiff indicated that he intended to "immediately email a copy of all the relevant filings" in this case to the United States Attorney's Office for the Northern District of California,

5

and serve all relevant documents on the same office by April 22, 2025, at the latest. Dkt. No. 4-3 (Banias Decl.).

As other courts in this district have done, I issued a Judicial Referral for Purpose of Determining Relationship of this matter to Case 4:25-cv-03140-JSW, which is the lowest numbered case in this district involving similar legal questions and facts. Dkt. No. 11.

## LEGAL STANDARD

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.' " *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.' "); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (citation omitted).

The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the

plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

The likelihood of success on the merits is the most important *Winter* factor. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Plaintiff bears the burden of demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131

**DISCUSSION**

The government has been provided with copies of the plaintiff's motion and TRO Motion. *See* Dkt. No. 4-3, ¶ 5. As two other courts in this district have observed in recent days, while "very few circumstances" justify an ex parte TRO, I find it appropriate at this stage to protect Sky from further adverse action until Judge White, or this court, if the case is not re-assigned, has the chance to consider the matter. *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

Sky has established a likelihood of success on the merits of his APA claim that the government's action to terminate his SEVIS record was arbitrary and capricious. The termination of a SEVIS record has been considered a "final agency action," reviewable by courts under the APA. *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 (3d Cir. 2019). There is no indication that the government has met its own regulatory requirements for the termination of a SEVIS record. *See* 8 C.F.R. § 214.1(d). Nor is there evidence that Sky has failed to maintain his F-1 status. While Sky was arrested once, he does not have any convictions on his record, let alone a conviction for a crime of violence with a term of prison that exceeds one year. *See id.*, subd. (g). The record indicates that his F-1 visa expired naturally in 2022, but ICE policy provides that visa revocation is not, in itself, cause for termination of the student's SEVIS record, *see* ICE, Policy Guidance 1004-04- Visa Revocation (June 7, 2010)[3], let alone that visa *expiration* is cause for termination.

---

[3] Other courts in this Circuit and elsewhere have confirmed that visa revocation is not by itself a reason for terminating a SEVIS record for nonimmigrant students. *See e.g. Chen*, No. 3:25-cv-03292-SI, at *8; *Student Doe, v. Kristi Noem, et al.*, No. 2:25-CV-01103-DAD-AC, 2025 WL 1134977, at *6 (E.D. Cal. Apr. 17, 2025); *Roe, et al. v. Noem, et al.*, No. 25-cv-00040-BU-DLC, 2025 WL 1114694, at *3 (D. Mont. Apr. 15, 2025).

7

Sky also has a strong likelihood of irreparable harm in the absence of immediate relief. Sky asserts that since he lost his F-1 immigration status, he cannot finish his degree at UC Berkeley, even though he is scheduled to graduate next summer. Sky Decl. ¶ 31. This would render his previous years of pursuing a Ph.D. at UC Berkeley "worthless." *Id.* Moreover, as Sky points out, ICE's website instructs students to "leave immediately" after their SEVIS record is terminated; every day he remains, Sky is seemingly accruing unlawful presence in the United States, which jeopardizes his chance of seeking re-admission in the future for work or other reasons. *Id.* ¶ 32. Sky also faces the implication that his SEVIS record was terminated for having a criminal record, or for having is F-1 visa revoked, both of which are likely to impede his professional prospects in the future. *Id.* ¶ 33. Finally, Sky says that facing the prospect of abandoning his Ph.D. and being forced to leave the country is causing him "serious mental anguish." *Id.* ¶ 35.

Finally, the final two *Winters* factors—merged together when the government is the defendant—favor Sky. The government would not suffer any lasting damage by refraining from detaining Sky, who has no record of criminal convictions and poses no safety threat to his community or to the nation writ large, or from allowing Sky to continue his studies and work in the interim. The public interest is best served through a fair and thorough hearing of Sky's claims, as the Hon. Susan Illston put it, "absent any distraction or confusion that would result should the government detain [the plaintiff]." *Chen*, 3:25-cv-03292-SI, Dkt. No. 18 at 9.

In sum, I, like courts before me, conclude that the plaintiff's APA claim merits immediate judicial intervention, although this court will also reserve judgment on broader relief. A temporary restraining order is a tool for courts to preserve the status quo. Here, there is no question that the status quo includes keeping Sky out of immigration detention and in continued studies and employment. My decision comports with other, similar relief granted to other plaintiffs in potentially related cases within this district. *See* 3:25-cv-03292-SI; 5:25-cv-03244-NW; 4:25-cv-03140-JSW.[4]

---

[4] Under the circumstances of this case and because the TRO should not result in any financial damage to the government, the requirement that Sky give an amount of security is waived.

8

**CONCLUSION**

For the foregoing reasons, to prevent irreparable harm from a potentially arbitrary and capricious government action, the court ORDERS as follows:

(1) Defendant is enjoined for fourteen days from arresting and incarcerating plaintiff Tian Qui (a/k/a Sky Qui) pending resolution of these proceedings; and

(2) Defendant is enjoined for fourteen days from transferring plaintiff Tian Qui (a/k/a Sky Qui) outside the jurisdiction of this District pending the resolution of these proceedings; and

(3) Defendant is enjoined for fourteen days from imposing any legal effect that otherwise may be caused by the termination of plaintiff Tian Qui's (a/k/a Sky Qui) SEVIS status or the potential unlawful revocation of his F-1 visas.

**IT IS SO ORDERED.**

Dated: April 22, 2025



William H. Orrick
United States District Judge